## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| **ANTHONY RAY RIVERA** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **No. 16-5003** |
| | : | |
| **JOSHUA HOBSON** | : | |

### MEMORANDUM

**KEARNEY, J.**                                                                                            **October 11, 2018**

A person driving the wrong way on a dark, one-way street after 2:15 AM and hitting a running pedestrian would face several fact issues precluding summary judgment in his favor on the injured pedestrian's negligence claim. But what if the driver is a police officer claiming he is pursuing a suspect in response to a dispatch call for assistance. And what happens if the officer does not turn on his overhead lights or siren. And what if the pedestrian suspect knows the police are chasing him and he is fleeing apprehension. Is the police officer entitled to governmental or official immunity from negligence damages as a matter of Pennsylvania law? Based solely on the adduced evidence before us today, the police officer is not entitled to governmental or official immunity and our jury must decide whether he acted negligently.

We cannot find governmental immunity as the parties dispute the actions taken by the first responding officer which could have caused a reasonable person to know police asked him to stop or pursued him. Absent governmental immunity, the officer may still obtain official immunity where his conduct – driving the wrong way down a one-way street without activated lights or sirens – is authorized by law or the officer in good faith reasonably believed his conduct is authorized by law. Here, the officer approached the pedestrian in a "silent deployment" mode absent overhead lights or siren when travelling the wrong way on a one-way street. Under the

clearly established law detailed in police directives, an officer may use silent deployment but cannot proceed the wrong way on a one-way street without his overhead lights and siren – so as to notify pedestrians and other motorists of his travelling the wrong way.

Given the officer's unilateral decision to violate Pennsylvania law by going the wrong way on a one-way street without activating overhead lights or sirens while on "silent deployment," we also cannot find he had a reasonable good faith belief the law permitted his conduct. The established law allows certain exceptions for officers in emergency mode but did not allow this exception. Officers cannot craft an exigency exception where none exists – the established law did not allow him to drive the wrong way in silent deployment. Allowing official immunity based on an officer's subjective belief he can except his conduct from the established law allows the officer-created exception to swallow the established law. Officers could explain away all kinds of traffic chaos caused in a perceived pursuit. The established law and the police directive do not allow him this wide berth – the law allows an officer to drive the wrong way but not without activating his lights and siren. We cannot find the officer acted in good faith allowing him official immunity from negligence damages.

## I.    Undisputed Facts[1]

At 2:15 AM on September 19, 2014, Anthony Ray Rivera arrived drunk to the Happy Tap Bar, located at the corner of 4th and Pierce Streets in Bethlehem, hoping to continue his twenty-first birthday celebration.[2] Mr. Rivera found the bar closed and the doors locked.[3] Bar employees turned Mr. Rivera away by yelling through the door the bar is closed.[4] Bar employees called Bethlehem police when Mr. Rivera did not leave.[5] Mr. Rivera admits Bethlehem police dispatcher radioed to Officer Glen Woolard, then on foot: "The Happy Tap

601 East 4th Street. Caller reports someone trying to break into the building." Mr. Rivera disputes the dispatch call reported a burglary in process.[6]

Officer Woolard, located near a Bethlehem Police Department substation, responded to the call by heading to the bar on foot.[7] Officer Woolard observed, and surveillance video recorded, three men standing outside the bar.[8] As the fully uniformed Officer Woolard approached the bar, he shouted to the men to stop, but the parties dispute the material fact of whether Officer Woolard identified himself as a police officer.[9] Officer Woolard radioed Officer Joshua Hobson for assistance, telling Officer Hobson to drive the wrong way down the one-way Pierce Street to get to the bar at the corner of 4th and Pierce Streets.[10] Officer Hobson did not activate his overhead lights or siren, and proceeded in a "silent deployment" as he approached the bar.[11]

Despite Officer Woolard's shouts to the men to stop, two of the men got into a car outside the bar while the third man, Mr. Rivera, attempted to get into the rear passenger side of the car.[12] Unable to access the car, Mr. Rivera began to run away from Officer Woolard, rounding the corner of 4th Street and heading north on Pierce Street.[13] The parties dispute whether Mr. Rivera's actions constitute "fleeing" from police - Officer Hobson contends Mr. Rivera began "fleeing" while Mr. Rivera contends he "ran" from what he believed were two unidentified men coming to attack him, not a police officer.[14] As Mr. Rivera ran up Pierce Street, Officer Hobson drove down Pierce Street in "silent deployment" and hit Mr. Rivera with his police cruiser.[15] Officer Hobson radioed for an ambulance for Mr. Rivera who, as a result of the accident, suffered multiple injuries including head trauma, fractures, collapsed lung, and lacerations.[16]

**Analysis**

Mr. Rivera sued Officer Hobson for, among other things, negligence in his individual and official capacities.[17]    Officer Hobson now moves for summary judgment arguing (1) Mr. Rivera's negligence claim is barred by Pennsylvania's Political Subdivision Tort Claims Act (the "Act")[18]; and (2) even if Mr. Rivera's claim is not barred by the Act, Officer Hobson is entitled to official immunity from the negligence claim.  Mr. Rivera responds there are genuine issues of material fact precluding summary judgment on governmental immunity under the Act and Officer Hobson is not entitled to official immunity.

### A. Genuine issues of material fact preclude us from finding Officer Hobson is entitled to governmental immunity under Pennsylvania's Political Subdivision Tort Claims Act.

The Pennsylvania General Assembly, through Section 8541 of the Act, grants "local agencies," such as the City of Bethlehem, and their employees acting within their official capacities general immunity from liability for state law tort claims "caused by any act of the local agency or an employee thereof or any other person."[19]  "Suits against municipal employees in their official capacities are treated as claims against the municipal entities that employ these individuals . . . because, in a suit against a municipal official in his official capacity, the real party in interest is the municipal entity and not the named official."[20]

The Act identifies exceptions to governmental immunity; a "local agency shall be liable for damages on account of an injury to a person or property" if two conditions are satisfied.[21]  Liability is imposed where (1) "[t]he damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by person not having a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity) **and** (2) "[t]he injury was caused by the negligent acts of the local agency

4

or an employee thereof acting within the scope of his office or duties with respect to" one of eight narrow circumstances.[22] One of the eight exceptions is "vehicle liability":

> The operation of any motor vehicle in the possession or control of the local agency, **_provided that the local agency shall not be liable_** to any plaintiff that claims liability under this subsection **_if the plaintiff was, during the course of the alleged negligence, in flight or fleeing apprehension or resisting arrest by a police officer_** or knowingly aided a group, one or more of whose members were in flight or fleeing apprehension or resisting arrest by a police officer.[23]

Officer Hobson argues the vehicle liability exception to governmental immunity does not apply here because Mr. Rivera's injury occurred while fleeing from police and his negligence claim is barred by the Act. Mr. Rivera responds there are disputed questions of fact on whether he knowingly fled from Officer Woolard.

Deciding whether governmental immunity applies centers on whether Mr. Rivera suffered injury while "in flight or fleeing apprehension" and the application of a 2014 opinion from the Pennsylvania Commonwealth Court in *White v. City of Philadelphia.*[24] In *White*, a police officer in an unmarked police car, without activated lights or sirens, and without identifying himself as a police officer, struck plaintiff while in pursuit. Mr. White sued the officer for negligence as a result of his injuries sustained in the incident. The officer argued the "in-flight" exception to the vehicle liability exception under Section 8542(b)(1) barred Mr. White's claim, and moved for involuntary nonsuit. The trial court denied the officer's motion, holding whether Mr. White's injuries occurred while in flight or fleeing apprehension is a jury question.[25] At trial, the court, over the defendant officer's objection, submitted a question to the jury whether, at the time of the incident, Mr. White knew the officer "was a police officer and as a result the Plaintiff was fleeing apprehension."[26] The jury found White did not know a police officer pursued him, and awarded him damages. The city and officer appealed, challenging the

trial court's decision to allow the jury to consider whether Mr. White knew a police officer was in pursuit.

On appeal, the Pennsylvania Commonwealth Court addressed "whether, as a matter of law, a plaintiff must *know* that he is fleeing apprehension by a police officer in order for the plaintiff to be considered a 'fleeing suspect' or 'in flight or fleeing apprehension . . . by a police officer' under Section 8542(b)(1)."[27] The Commonwealth Court found while the Act "does not in any way take into account the mental state of the person in flight, but instead focuses on the impact of imposing a duty of care on the officer's decision whether or not to give chase and the social utility of his being free to do so when appropriate," the Pennsylvania Supreme Court's earlier decisions interpreting the Act "included the assumption that the person fleeing had been requested or otherwise signaled to stop."[28] The Commonwealth Court held "as a prerequisite to [the] doctrine that an officer has no duty of care to a fleeing offender is that the officer has first taken some action which would cause a reasonable person to know he is being asked to stop or otherwise he is being pursued by police."[29] The Commonwealth Court emphasized this is an objective standard; the question is whether *the fleeing suspect had reasonable cause to know* pursuit by police and is "not an inquiry into the subjective thoughts of the fleeing suspect, which the officer cannot possible know when making a decision whether to give chase."[30]

Applying *White*, Officer Hobson argues there are no issues of disputed fact because Mr. Rivera's injury occurred while fleeing from Officer Woolard, pointing to Officer Woolard's testimony he wore full police uniform and shouted at Mr. Rivera "[s]top, Bethlehem Police!" Officer Hobson argues it does not matter under *White* whether Mr. Rivera subjectively believed to be running from the police; the question is "what a *reasonable officer* would believe when viewing a fleeing suspect."[31] We agree with Officer Hobson the relevant inquiry is not Mr.

6

Rivera's subjective belief, but we disagree the question is what a reasonable *officer* believes. The Commonwealth Court in *White* squarely instructed the inquiry is whether an officer has first taken some action to cause a *reasonable person* to know he is being asked to stop or is being pursued by police.

Mr. Rivera responds there are fact questions on whether he "knowingly" fled from Officer Woolard. We disagree with Mr. Rivera's identification of the issue. The question is not whether Mr. Rivera "knowingly" fled from Officer Woolard; the question is whether Officer Woolard's actions would cause a *reasonable person* to know he is being asked to stop or is being pursued by police.

Our careful review confirms fact issues on whether Officer Woolard took some action to cause a reasonable person to know he is being asked to stop or otherwise being pursued by police. Officer Woolard testified at around 100 yards from the three men he shouted, "Stop, I need to talk to you guys. Stop, Bethlehem police" and from about 60 yards shouted, "Yo, guys, stop. Don't go anywhere, I need to talk to you. Yo, buddy. Bethlehem police, don't go anywhere."[32]

Officer Woolard testified other than shouting "stop, Bethlehem police," he did not otherwise verbally identify himself to the three men, but points out he wore his full police uniform.[33] Officer Woolard testified his full police uniform consisted of navy blue pants with a black stripe up the side, a navy blue shirt with gold buttons, a police badge, gun belt containing a "pistol, OC, taser, baton, and two handcuffs," and black boots.[34] Officer Woolard testified he put on his flashlight and shined it at the three men, continued giving commands, and, when the three men attempted to get into the car, Officer Woolard radioed Officer Hobson believing the men were going to flee. Officer Woolard testified he continued to shine his flashlight at Mr.

7

Rivera at told him to "stop, don't go anywhere. I need to talk to you," at which point Mr. Rivera turned and ran around the corner onto Pierce Street.[35]

Mr. Rivera disputes Officer Woolard verbally identified himself as a police officer. Mr. Rivera points to Officer Woolard's written report of the incident arguing it does not indicate Officer Woolard verbally identified himself as a police officer. Officer Woolard's written report states he "yelled to the males, 'Stop! Don't go anywhere, I need to speak with you", and again, when the men attempted to get into the car, yelled "Stop!" and flashed a flashlight in Mr. Rivera's face saying "You! Don't move!"[36] Officer Woolard testified he wrote the incident report the night of the incident, and he does not know why the report fails to note his identification of himself as a police officer, explaining "[n]ot everything you see or do is going to be in a report necessarily."[37]

Mr. Rivera additionally points to his own deposition testimony he believed two black men – not a police officer - were coming after him screaming "Hey, you guys" or "Hey, you."[38] Mr. Rivera also points to witness Reginald Allen who gave a recorded statement on January 13, 2017.[39] Mr. Allen contends he witnessed the incident and heard a police officer say "freeze, stop running, freeze" but the officer did not identify himself as police.[40] Mr. Rivera disputes Officer Woolard and Officer Hobson visually identified themselves as police officers pointing to Officer Woolard's navy blue police uniform with no reflective markings or words indicating police as difficult to see in the dark of night and Officer Hobson's failure to activate his emergency lights and siren.

Officer Hobson relies heavily on the surveillance video tape, arguing it refutes Mr. Rivera's version of the incident. The video shows the street lights shining on 4th Street outside the bar, a marked police car without activated lights or sirens driving past Mr. Rivera and the

8

other two men on 4th Street, the men moving to get into a car, Mr. Rivera turning to run, a uniformed officer (presumably Officer Woolard) with a flashlight running towards Mr. Rivera on 4th Street as Mr. Rivera turned the corner onto Pierce Street, and two police cars pulling up to the Happy Tap Bar with lights on. The video – without audio - does little to resolve the question of whether Officer Woolard's actions would cause a reasonable person to know he is being asked to stop or otherwise he is being pursued by police. Officer Woolard and Mr. Rivera each have their versions of the incident, and their credibility must be resolved by the jury.

### B. Official immunity under the Political Subdivision Tort Claims Act does not apply to Officer Hobson's conduct.

Officer Hobson next argues even if governmental immunity under the Act does not apply, official immunity protects him from liability as a matter of law. Officer Hobson asserts the defense of official immunity found in Section 8546 of the Act, specifically subsection (2), providing "[i]n any action brought against an employee of a local agency for damages on account of an injury to a person ... based upon claims arising from, or reasonably related to, the officer or the performance of the duties of the employee, the employee may assert on his own behalf ... [t]he defense that the conduct of the employee which gave rise to the claim was authorized ... by law, or that he in good faith reasonably believed the conduct was authorized ... by law."[41]

Mr. Rivera responds official immunity does not protect Officer Hobson because his conduct in driving the wrong way down Pierce Street without activated lights or sirens is not authorized by law, and Officer Hobson could not have in good faith reasonably believed his actions were so authorized.

9

## 1. The Pennsylvania Supreme Court's *Dorsey* decision.

In *Dorsey v. Redman*, the Pennsylvania Supreme Court considered the applicability of the Act with respect to a claim alleging a Pennsylvania county Register of Wills violated bonding requirements mandated by Pennsylvania's probate code.[42] The court concluded Pennsylvania's General Assembly intended the requirements of its probate code to impose "a targeted form of accountability" for registers of wills "outside the scope" of governmental immunity under the Act.[43] Having concluded governmental immunity under Section 8541 under Act did not immunize the Register's alleged breach of Pennsylvania's probate code, it next addressed whether assessing the applicability of official immunity under Section 8546 of the Act is a question of fact for the jury or a legal issue to be determined by the trial court.[44] The court concluded the question of official immunity under the defense in Section 8546(2) of the Act is a preliminary question to be resolved by the court.[45]

Although we do not have the same facts as *Dorsey* – here, there is no question as to the applicability of the Act in the first instance – it is nevertheless instructive on the distinction between governmental immunity and official immunity, and is binding on the question of a court's determination of official immunity before trial.[46] As the court explained in *Dorsey*, there is a distinction between "governmental immunity" and "official immunity."[47] As discussed above, "governmental immunity" provided by Section 8541 of the Act addresses the liability of a "local agency" and, "by its terms, … does not directly apply to individuals."[48] Section 8545, on the other hand, "concerning 'official liability,' speaks to the liability of an employee of a local agency" and limits an employee's liability for damages caused by the employee within the scope of his duties "only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter."[49] The Pennsylvania Supreme Court explained "in limiting the

liability of the employee of a local agency to the liability of the local agency for which he or she is acting, the Tort Claims Act links concepts of official liability to concepts of governmental liability."[50]

Under *Dorsey*'s guidance, then, Officer Hobson is only liable to the extent the City of Bethlehem is liable. As previously discussed, we find genuine issues of fact on whether the vehicle liability exception to Section 8542 applies here, and we cannot at this time afford governmental immunity of Section 8541 to Officer Hobson through Section 8545. But Officer Hobson may still raise the defense of official immunity under Section 8546, and he argues we should do so and find him immune.

The Pennsylvania Supreme Court's decision in *Dorsey* instructs Section 8546 "is the legislative embodiment of official immunity for local agency employees" and "grants official immunity for such employees when, *inter alia,* 'the conduct of the employee which gave rise to the claim was authorized or required by law, or that he in good faith reasonably believed the conduct was authorized by law.'"[51] Under *Dorsey*, we apply an objective standard to the question of whether "the public official's conduct was authorized or required by law, or that he in good faith reasonably believed the conduct was authorized or required by law."[52]

We are also directed by the Pennsylvania Supreme Court's *Dorsey* holding the question of official immunity is a preliminary question for us to resolve as we would in evaluating a state actor's qualified immunity for federal claims.[53] We must determine whether Officer Hobson's conduct – driving the wrong way down Pierce Street in response to Officer Woolard's request for assistance without lights and sirens – is "authorized by law" *or* whether Officer Hobson "in good faith reasonably believed the conduct was authorized . . . by law."[54] If Officer Hobson

11

shows either of these elements as part of his defense, we will afford him official immunity as a matter of Pennsylvania law from this negligence claim.

## 2. Officer Hobson's conduct is not authorized by law.

Officer Hobson has not shown his conduct is authorized by Pennsylvania law. Pennsylvania law requires on "roadway[s] designated for one-way traffic, a vehicle shall be driven only in the direction designated at all or such times as shall be indicated by official traffic-control devices."[55] Drivers of emergency vehicles, when responding to an emergency call or when in pursuit of a suspect, may exercise "special privileges" allowing them to, *inter alia*, "disregard regulations governing direction of movement."[56] Emergency vehicle drivers may exercise these special privileges "only when the vehicle is making use of an audible signal and visual signals meeting the requirements and standards set forth in regulations adopted by the department."[57]

In *Lahr v. City of York*, the Pennsylvania Commonwealth Court addressed the "special privileges" Section 3105 of Pennsylvania's Vehicle Code in the context of a negligence claim against a police officer who collided with plaintiff while pursuing a suspected gunman.[58] Although the Commonwealth Court's application of Section 3105 did not arise in determining the officer's official immunity, its construction of Section 3105 is helpful today. The distinguished Judge Flaherty of the Commonwealth Court construed Section 3105 as requiring "the driver of an emergency vehicle responding to an emergency call to meet several conditions in order to invoke the special privileges. First, there must be an emergency involved. Second, the operator must be "making use" of audible and visual signals. Third, the signals that are in use must meet the requirements and standards of the department. Otherwise, the statutory language in Section 3105 of the Vehicle Code which states that 'privileges ... shall apply only

12

when the vehicle is … meeting the requirements and standards set forth in regulations adopted by the department' would be rendered useless."[59] The Commonwealth Court found the "special privileges" for emergency drivers in Section 3105 "are expressly subject to definite qualifying conditions before it becomes operative to shield someone from invoking its protection," quoting subsection (c) of Section 3105, and rejected the city's and officer's "attempt[] to use the statute to acquire the [special] privilege[s] without complying with the express terms of the statute that created it."[60] Because the city and officer "did not qualify for the privilege under the terms of the statute that created it, they must abide by the same consequences as the ordinary vehicle operator who violates the Vehicle code by speeding the wrong way on a one-way street and causes an accident."[61]

Consistent with Pennsylvania's Vehicle Code, the City of Bethlehem Police Department has a directive governing "Safe Operation of Department Vehicles (Emergency and Non-Emergency Conditions)" (the "Directive").[62] The Directive defines "Emergency Driving" as "[d]riving while using both audible and visual signals in response to an occurrence which, based on available information, indicates the need for rapid police response."[63] The Directive defines "Silent Deployment" as "[r]esponding in an attempt to apprehend suspects at or near the scene of a crime by: 1 [e]liminating the audible signal within audio proximity of the scene. 2; [e]liminating the visual signal within visible proximity of the scene."[64] The Directive contains an "Emergency Vehicle Operation" section specifically providing the "special privileges" afforded drivers of emergency vehicles as set out in Section 3105 of Pennsylvania's Vehicle Code, including "disregard[ing] regulations governing direction or movement," but only "when making use of audible and visual signals."[65]

13

Officer Hobson's driving one-way without the overhead lights and sirens is not permitted by law, even when pursuing a suspect, and is, therefore, not "authorized by law" sufficient to bring his conduct within the official immunity defenses of Section 8546(2).

### 3. Officer Hobson has not established a good faith reasonable belief he was following the law.

Officer Hobson may also be entitled to official immunity from negligence under Pennsylvania law if he in good faith reasonably believed Pennsylvania law authorized his conduct. Officer Hobson argues Mr. Rivera and his expert "take a far too simplistic and literal read" of both Pennsylvania's Vehicle Code and the Directive and "fail to address the issue before the Court ... did Officer Hobson have a reasonable good faith belief he was permitted to exercise discretion and professional judgment when responded to a burglary in progress."[66] Officer Hobson contends he ought to be afforded immunity here.[67]

We find no support for Officer Hobson's "reasonable good faith" belief argument given the clear dictates of Pennsylvania's Vehicle Code, Section 3105 which permits drivers of emergency vehicles "special privileges" to disregard directional signs "*only when the vehicle is making use of an audible signal and visual signal* meeting the requirements and standards set forth in regulations adopted by" Pennsylvania's Department of Transportation.[68] Pennsylvania's Vehicle Code does not offer the level of ambiguity which could possibly open the door to a good faith argument. Consistent with Pennsylvania's Vehicle Code, the City of Bethlehem's police directives provides "[e]mergency driving special privileges cease when: 1. [d]riving in Silent Deployment mode" (the "Directive").[69] Officer Hobson admits driving in Silent Deployment mode without either the overhead lights or siren.

The Vehicle Code is clearly established law in Pennsylvania, as recently analyzed by Judge Flaherty in *Lahr*. Officer Hobson testified he received training in the operation of police

14

vehicles, including training on the "parameters" of driving the wrong way on a one-way street.[70] Officer Hobson explained he could drive the wrong way down a one-way street, testifying "circumstances are number one, obviously violent crimes in progress, officer assists" and "[a]ny time an officer is in need of help or any time you feel you need to get on location as fast as possible if that's the nearest route to take and it can be done safely, so be it."[71]

Officer Hobson testified he heard a radio call "burglary in progress at the Happy Tap" and then heard Officer Woolard radio "he [Officer Woolard] had eyes on or he observed males standing outside the Happy Tap"; he told Officer Woolard he "would come up Buchanan Street and [Officer Woolard] advised [Officer Hobson] to come up Pierce Street in an attempt to get on location faster being the nature of the call was a burglary in progress"; and it "was unclear to us [Officers Woolard and Hobson] if the burglary was in progress, if there was somebody inside" and "that's what we were responding to."[72]

Officer Hobson does not dispute he drove in silent deployment mode in response to Officer Woolard's request for assistance and does not dispute the Directive tells officers they cannot drive the wrong way down a one-way street while in Silent Deployment.[73]   Officer Hobson instead contends there are extenuating circumstances "where the officers can overrule the directives."[74]   At his first deposition, Officer Hobson swore he did not put on his lights or siren because Silent Deployment, when arriving on a scene of a felony or potential violent crime, allows for protection to the officer: "you don't want to be the target and showing up in a lit-up patrol vehicle" and wanted the "element of surprise . . . [to] have the upper hand."[75] At his second deposition, Officer Hobson conceded the Directive states "special privileges" cease when driving in Silent Deployment, but testified he believed the "potentially . . violent felony in progress" allowed him to make the decision to drive in Silent Deployment.[76]

15

Officer Hobson concedes the Directive does not support his broad crafting of an exception to the Vehicle Code and Directive and concedes there is no written document he has seen allowing for "extenuating circumstances" to override the Directive.[77] He further explained he operated his police cruiser after assessing his ability to safely drive the wrong way down Pierce Street, he could see "all the way up the street and there were no other vehicles coming" and silent deployment "is out there" to provide police "a little bit of cover" or safety when responding to a violent felony in progress.[78]

Officer Hobson suggests we should apply official immunity under the Act in the same way as qualified immunity is applied under 42 U.S.C. § 1983. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[79] The Supreme Court instructs "[b]ecause the focus in on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct."[80]

Using Officer Hobson's qualified immunity analog, a law is "clearly established" if the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."[81] "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[82] An "officer's subjective beliefs about the legality of his or her conduct generally 'are irrelevant.'"[83]

An analogy to qualified immunity for federal claims appears to cut against Officer Hobson because at the time of his challenged conduct, Pennsylvania's Vehicle Code permitted drivers of emergency vehicles to disregard directional signs *only* when the driver activates an audible signal and visual signals. If we accept Officer Hobson's analogy, an officer is not acting

16

in good faith if he violates clearly established law, such as Pennsylvania's Vehicle Code. Accepting Officer Hobson's analogy, his good faith subjective belief about the legality of his conduct is not relevant.

We are not aware of ambiguity in the Vehicle Code or City of Bethlehem police directives. Officer Hobson admittedly understood them. He wrongly and unreasonably thought extenuating circumstances applying to parking violations may allow him to unilaterally overrule the prohibition against driving the wrong way on a one-way street without overhead lights or sirens.

We appreciate Officer Hobson's diligence but his conduct must comport with the clearly established law. Extending good faith to include conduct clearly violative of the Law and police directives is not reasonable good faith. The Law does not allow police officers to unilaterally decide to ignore the Vehicle Code in pursuit. To the contrary, the Vehicle Code and the Directive specifically address the officer's obligations when in emergency mode – as he may have been this early morning. Given the mandated strict construction of the immunity statutes under Pennsylvania Law, we cannot craft additional exceptions not provided by the General Assembly to immunize potential negligence under Pennsylvania Law. Officer Hobson's good faith belief is not reasonable in light of the established Law.

We cannot find he is entitled to the good faith defense of official immunity. Whether Officer Hobson is negligent is a matter of fact for the jury.[84]

## III. Conclusion

There are fact issues precluding summary judgment on negligence theories. Officer Hobson is not entitled to governmental or official immunity. In the first instance, disputed facts – namely, whether Officer Woolard's actions would have caused a reasonable person to know he

is being asked to stop by police or otherwise know police are in pursuit – precludes the application of governmental immunity under the Act. The parties will argue these facts to the jury. On the issue of official immunity, we cannot find Officer Hobson immune as a matter of law when he drove the wrong way on a one-way street without activating his lights and siren violating both Pennsylvania law and Bethlehem police directive. We deny Officer Hobson's motion for summary judgment in the accompanying Order.

---

[1] Our Policies require a Rule 56 movant to file a Statement of Undisputed Material Facts as well as a Bates stamped Appendix. Officer Hobson's moved for summary judgment and Mr. Rivera responded before reassignment of this case to us, and, consequently, do not conform to our Policies. Officer Hobson filed a Motion for summary judgment and supporting brief (ECF Doc. No. 28), a "Statement of Relevant Undisputed Facts" ("SUF") (ECF Doc. No. 29), and an Appendix ( ECF Doc. Nos. 29, 40). Mr. Rivera filed his response (ECF Doc. No. 34), and a "Counter-Statement of Material Facts" in opposition to Officer Hobson's SUF, "Additional Material Facts," and a separate Appendix (ECF Doc. No. 35). Officer Hobson filed a reply brief (ECF Doc. No. 40) and reply to Mr. Rivera's Additional Material Facts (ECF Doc. No. 36). Mr. Rivera filed a sur-reply (ECF Doc. No. 45). Because neither party's Appendix is Bates stamped, we use the pagination assigned by the CM/ECF docketing system if no other pagination is indicated.

[2] Complaint at ¶ 14 (ECF Doc. No. 1); SUF at ¶ 2 (ECF Doc. No. 29).

[3] Additional Facts at ¶ 29 (ECF Doc. No. 36).

[4] Additional Facts at ¶ 31 (ECF Doc. No. 36).

[5] SUF at ¶ 3 (ECF Doc. No. 29).

[6] Response to SUF at ¶ 3 (EFC Doc. No. 35).

[7] SUF at ¶ 4 (ECF Doc. No. 29).

[8] SUF at ¶ 6 (ECF Doc. No. 29).

[9] SUMF at ¶ 7 (ECF Doc. No. 29); Additional Facts at ¶ 42 (ECF Doc. No. 35).

[10] SUF at ¶ 8 (ECF Doc. No. 29).

[11] SUF at ¶ 5 (ECF Doc. No. 29).

18

[12] SUMF at ¶ 9 (ECF Doc. No. 29).

[13] SUF at ¶¶ 9-11 (ECF Doc. No. 29).

[14] SUF at ¶11 (ECF Doc. No. 29); Response to SUF at ¶ 11 (ECF Doc. No. 35); Additional Facts at ¶¶ 52-55 (ECF Doc. No. 35).

[15] SUF at ¶ 13 (ECF Doc. No. 29).

[16] Additional Facts at ¶ 70 (ECF Doc. No. 36).

[17] Mr. Rivera initially sued under 42 U.S.C. § 1983 against the City of Bethlehem and Bethlehem Police Department; § 1983 supervisory liability against Police Chief Mark DiLuzio; common law negligence against Officer Hobson; common law assault, battery, and intentional infliction of emotional distress against Officer Hobson; and a "respondeat superior/agency" claim against the City of Bethlehem and Bethlehem Police Department. The parties stipulated to the dismissal with prejudice of common law assault, battery, and intentional infliction of emotional distress claims against Officer Hobson and later stipulated to the dismissal of all claims against all Defendants except the common law negligence claim against Officer Hobson in both his official and individual capacities. ECF Doc. Nos. 10, 27, 30.

[18] 42 Pa.C.S.A. § 8541 *et seq.*

[19] 42 Pa.C.S.A. § 8541. A "local agency" is defined as "[a] government until other than the Commonwealth government. The term includes, but is not limited to, an intermediate unit; municipalities cooperating in the exercise or performance of governmental functions, powers or responsibilities . . .; and councils of government and other entities created by two or more municipalities . . .." 42 Pa.C.S.A. §8501.

[20] *Lopez v. Maczko*, No. 02-8645, 2007 WL 2461709, at * 8 (E.D. Pa. Aug. 16, 2007) (quoting *Lakits v. York*, 258 F.Supp.2d 401, 405 (E.D. Pa. 2003)).

[21] 42 Pa.C.S.A. § 8542(a).

[22] 42 Pa.C.S.A. §8542(a)(1),(2). "Negligent acts," as used in the statute, does not include "acts or conduct constituting a crime, actual fraud, actual malice or willful misconduct." §8542(a)(2). There is no allegation Officer Hobson's conduct constitutes a crime, actual fraud, actual malice or willful misconduct.

[23] 42 Pa.C.S.A. § 8542(b)(1) (emphasis added).

[24] 102 A.3d 1053 (Pa. Commw. 2014).

[25] *Id.* at 1055.

[26] *Id.*

[27] *Id.* at 1057.

[28] *Id.* at 1059.

[29] *Id.*

[30] *Id.* at 1059-60 (footnote omitted).

[31] Brief in support of summary judgment at 6 (ECF Doc. No. 28) (emphasis added).

[32] N.T. Officer Woolard at 36-38 (ECF Doc. No. 29-9 at 13).

[33] *Id.* at 38.

[34] *Id.* at 38-39.

[35] *Id.* at 40-41 (ECF Doc. No. 29-9 at 14).

[36] ECF Doc. No. 35-3 at 2.

[37] N.T. Officer Woolard at 50-51 (ECF Doc. No. 29-9 at 16).

[38] N.T. Anthony Rivera at 48-52 (ECF Doc. No. 29-4 at 16).

[39] ECF Doc. No. 35-4.

[40] ECF Doc. No. 35-4 at 5-6. Officer Hobson objects to Mr. Allen's recorded statement, arguing we should strike it because Mr. Rivera's counsel did not produce the statement until March 23, 2018, three months after the December 15, 2017 discovery close. To the extent Officer Hobson claims prejudice, we will allow him to depose Mr. Allen before trial. Officer Hobson also objects Mr. Allen's recorded statement is inadmissible hearsay. It is not hearsay; Mr. Allen is a witness who testified to what he saw and heard from a party opponent the night of the incident.

[41] 42 Pa.C.S.A. § 8546(2).

[42] *Dorsey v. Redman*, 96 A.3d 332 (Pa. 2014).

[43] *Id.* at 333, 342.

[44] *Id.* at 342-43.

[45] *Id.* at 344-45.

[46] We ordered the parties to submit supplemental briefing on the effect of *Dorsey*. Mr. Rivera responded *Dorsey* requires us to decide whether Officer Hobson is entitled to official immunity, and argues he is not entitled to official immunity under Section 8546(2). ECF Doc. No. 49. Officer Hobson responds *Dorsey* is distinguishable because the claim there "sounded in *contract*" and the tort claim here "falls within the parameters" of the Act, specifically the "in flight and fleeing apprehension" exception to the vehicle liability exception to governmental immunity under Section 8642 of the Act. ECF Doc. No. 51. We disagree the claims in *Dorsey* "sounded in contract." We read the first question in *Dorsey* as limited to its facts regarding whether conduct in violation of Pennsylvania's probate code falls within the scope of the Act. We do not perceive a question here about whether the challenged conduct comes within the scope of the Act in the first instance. Officer Hobson agrees *Dorsey* requires us to determine whether he has official immunity under Section 8546(2) of the Act.

[47] *Dorsey* at 339-40.

[48] *Id.* at 339. As previously noted, the City of Bethlehem is a "local agency" under the Act, 42 Pa.C.S.A. §8501. Officer Hobson is an "employee" of the City of Bethlehem Police Department. Neither party contests these classifications.

[49] *Id.* (quoting 42 Pa.C.S.A. § 8545).

[50] *Id.*

[51] *Id.* at 343 (quoting § 8546(2)) (footnote omitted). As in *Dorsey*, Mr. Rivera does not allege Officer Hobson's actions constituted "a crime, actual fraud, actual malice or willful misconduct" vitiating the application of the official immunity defenses. *See* 42 Pa.C.S.A. § 8550.

[52] *Dorsey* at 344.

[53] *Id.* at 344-45. Mr. Rivera agrees we must decide whether Officer Hobson is entitled to official immunity. *See* ECF Doc. No. 49. Mr. Rivera concedes the defense of official immunity is available to Officer Hobson in both his official and individual capacities. *Id.*

[54] 42 Pa.C.S.A. §8546(2).

[55] 75 Pa. C.S.A. § 3308(b).

[56] 75 Pa.C.S.A. § 3105(a), (b).

[57] 75 Pa. C.S.A. § 3105(c).

[58] 972 A.2d 41 (Pa. Commw. 2009).

[59] *Id.* at 49.

[60] *Id.* at 49-50.

[61] *Id.* at 50.

[62] ECF Doc. No. 29-11.

[63] ECF Doc. No. 29-11 at 2.

[64] *Id.*

[65] *Id.* at 4.

[66] ECF Doc. No. 51 at 6.

[67] Officer Hobson cites a recent case from the Pennsylvania Commonwealth Court, *Justice v. Lombardo*, 173 A.3d 1230 (Pa. Commw. 2017) to argue Pennsylvania courts "strongly" apply state court immunities to protect officers from liability in tort actions. In *Justice*, the Commonwealth Court found a Pennsylvania state trooper immune from claims of assault and battery, false arrest, false imprisonment, and other tort claims under the doctrine of sovereign immunity. *Id.* at 1237-38. We recognize the Pennsylvania Supreme Court's construction of both the Sovereign Immunity and Tort Claims Acts: "Because the legislature's intent in both the Sovereign Immunity and Tort Claims Acts is to shield government from liability, except as provided for in the statutes themselves, we apply a rule of strict construction in interpreting these exceptions . . . [and] read them consistently." *Jones v. SEPTA*, 772 A.2d 435, 440 (Pa. 2001). We do not read *Justice* to require us to afford immunity to a police officer who disregards clear mandates of Pennsylvania's Vehicle Code when the same statute details exceptions but does not include Officer's Hobson's decision to travel the wrong way in silent deployment mode to answer a dispatch call.

[68] 75 Pa.C.S.A. § 3105 (emphasis added); *Lahr*, 972 A.2d at 49-50.

[69] ECF Doc. No. 19-11 at 5.

[70] N.T. Officer Hobson at 11 (ECF Doc. No. 29-6).

[71] N.T. Officer Hobson at 11-12 (ECF Doc. No. 29-6).

[72] N.T. Officer Hobson at 26-27 (ECF Doc. No. 29-6).

[73] SUF at ¶ 22 (ECF Doc. No. 29).

[74] SUF at ¶ 22 (ECF Doc. No. 29).

[75] N.T. Officer Hobson at 27-28 (ECF Doc. No. 29-6).

[76] N.T. Officer Hobson at 7-9 (ECF Doc. No. 29-10).

[77] N.T. Officer Hobson at 11 (ECF Doc. No. 29-10).

[78] N.T. Officer Hobson at 28 (ECF Doc. No. 19-6); N.T. Officer Hobson at 8-9 (ECF Doc. No. 29-10).

[79] *Kiesela v. Hughes*, ___ U.S. ___, 138 S.Ct. 1148, 1152, 200 L.Ed.2d 449 (2018) (per curiam) (quoting *White v. Pauly*, 580 U.S. ___, 137 S.Ct. 548, 551, 196 L.Ed.2d 463 (2017)).

[80] *Kisela*, 138 S.Ct. at 1152 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

[81] *Eichelman v. Lancaster Cty.*, 510 F. Supp. 2d 377, 387 (E.D. Pa. 2007) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

[82] *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

[83] *Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir. 1997) (quoting *Anderson*, 483 U.S. at 641).

[84] *But see Lahr*, 972 A.2d at 51-53.